**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**ABILENE DIVISION**

| | | |
|---|---|---|
| | § | |
| **ALENE BAGWELL,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 1:05-CV-0125-C** |
| | § | **ECF** |
| | § | **Referred to the U.S. Magistrate Judge** |
| **JO ANNE B. BARNHART,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

## REPORT AND RECOMMENDATION

**THIS MATTER** is before the court upon Plaintiff's complaint filed July 1, 2005, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's applications for widow's insurance benefits and for supplemental security income benefits under Title II and Title XVI of the Social Security Act. Plaintiff filed a brief in support of her complaint on November 22, 2005, Defendant filed her brief on December 20, 2005, and Plaintiff filed her reply on January 9, 2006. The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this matter to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. This court, having considered the pleadings, the briefs, and the administrative record, recommends that the United States District Judge affirm the Commissioner's decision and dismiss the complaint with prejudice.

## I.   STATEMENT OF THE CASE

Plaintiff filed applications for widow's insurance benefits on February 15, 2000, on the account of her deceased husband, Charles Bagwell, and for supplemental security income benefits

protectively on January 20, 2000, alleging disability beginning October 15, 1999. Tr. 17. Plaintiff's applications were denied initially and upon reconsideration. Tr. 57-60, 62-66, 449-57. Plaintiff filed a Request for Hearing by Administrative Law Judge on July 13, 2000, and this matter came for hearing before the Administrative Law Judge ("ALJ") on November 13, 2001. Tr. 17, 29-53, 56. Plaintiff, represented by a non-attorney, testified in her own behalf. Tr. 33-53. The ALJ issued a decision unfavorable to Plaintiff on December 12, 2001. Tr. 14-23.

In his opinion the ALJ noted that to be entitled to widow's insurance benefits, Plaintiff must show that her physical or mental impairments are of such severity as to prevent her from engaging in her previous work and, considering her age, education, and work experience, any other kind of substantial gainful activity in the national economy. Tr. 17. He noted that the specific issues on the Title II application are whether Plaintiff has attained age 50, whether she was the widow of the wage earner, whether she was unmarried, whether she was under a disability as defined in the Social Security Act, and if so, when such disability commenced and the duration thereof. Tr. 17-18. The ALJ found that: Plaintiff was over 50 years of age since October 15, 1999, the alleged onset date of disability. Tr. 18. Plaintiff was married to the deceased wage earner, Charles Bagwell, at the time of his death and has never remarried. *Id.* The period during which Plaintiff was required to establish that she is under a disability extends through February 2004. *Id.*

The ALJ also found that: Plaintiff has "severe" impairments, including osteoarthritis in her knees. Tr. 18. Plaintiff's mental impairment was not severe. Tr. 22. Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. Tr. 18-19. Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform her past relevant work or other work existing in the national economy.

The ALJ noted that: In making his RFC assessment, he had considered the opinions of the state agency medical consultants and agreed with their determination that Plaintiff did not have any impairments which met or equaled in severity any impairment in the Listing of Impairments.  Tr. 19.

Plaintiff's had a history of migraine headaches and arthritis, as well as arthritic pain in various joints. *Id*.  He noted the report of Robert Healing, M.D., her treating physician who opined that Plaintiff could not use her extremities due to rheumatoid arthritis in her knees, elbows, hands, and feet.  *Id*. The ALJ rejected Dr. Healing's opinion that Plaintiff could not use her extremities.  *Id*.  A physical examination in May 1999 revealed a large effusion and mild warmth in her right knee, as well as diminished range of motion due to pain.  *Id*.  Gunnam Ramachandran, M.D., performed an internal medicine consultative examination in May 2000.  *Id*.  Plaintiff reported pain in her knees, hands, shoulders, and back to the consultative examiner, as well as morning stiffness and depression.  Tr. 19.  The consultative examiner had reported 1+ swelling in both knees and painful flexion reduced by fifteen degrees in the right knee but found no redness or warmth in any joint.  *Id*.  The consultative examiner reported full range of motion in Plaintiff's hands and shoulders, normal gait, and indicated that Plaintiff was neurologically intact.  *Id*.  X-rays of Plaintiff's right knee were negative, and Dr. Ramachandran's impression was probable osteoarthritis of the knees and a history of depression.  *Id*.

The ALJ also noted Plaintiff's history of anxiety and depression, exacerbated by her husband's death in 1997. Tr. 19-20.  He noted Plaintiff's treatment at Abilene Mental Health Mental Retardation ("MHMR") since July 1997, as well as her initial diagnosis of major depression, single episode, moderate, without psychotic features, substance abuse (Valium[1]), grief reaction, and

---

[1]    Valium® (diazepam) is a benzodiapine derivative which is indicated for the management of anxiety disorders or for short-term relief of anxiety. *Physicians' Desk Reference*

personality disorder, NOS, with histrionic traits.  Tr. 19.  He noted that Plaintiff was given a Global

Assessment of Functioning ("GAF")[2] score on Axis V[3] of 45[4] at that time, indicating the presence

of serious symptoms.  *Id.*  The ALJ noted that Plaintiff's depression had improved with medication.

Tr. 19-20.  He indicated that he rejected the opinion of Gordon Abbo, M.D., her treating psychiatrist,

who indicated in a residual functional capacity assessment that Plaintiff was markedly and

moderately limited in several functional areas, had experienced more than four episodes of

decompensation, and had a very guarded prognosis.  Tr. 20.  The ALJ indicated that he rejected Dr.

Abbo's opinion insofar as it was not supported by his own treatment and progress notes.

     The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms,

including pain, and the extent to which these symptoms can be reasonably accepted as consistent

with the objective medical evidence and other evidence, based on the requirements of Social

Security Ruling 96-7p.  Tr. 20.  The ALJ found that based on the evidence in the record, Plaintiff's

statements concerning her impairments and their impact on her ability to work were not entirely

credible.  *Id.*  He noted Plaintiff's testimony regarding her symptoms, including waking at night

because of knee pain, having no feeling in her left hip, and having her hands knot up, swell, and

become numb on a daily basis.  Tr. 20-21.  The ALJ noted Plaintiff's testimony of being able to

---

(59th ed. 2005) at 2957.

     [2]     The GAF score on Axis V is for reporting the client's "psychological, social, and occupational functioning."  *See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32 ("DSM-IV").  This report of overall functioning is noted to be "useful in planning treatment and measuring its impact, and in predicting outcome."  *Id.*

     [3]     The axial system of evaluation enables the clinician to comprehensively and systematically evaluate a client.  *See generally, American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 25-30.

     [4]     A GAF of 41 to 50 indicates "serious symptoms" or "any serious impairment in social, occupational, or school functioning.  *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.

stand 10 or 15 minutes, sit 15 to 20 minutes, walk a few feet, and lift five pounds. Tr. 21. He noted her allegations of being unable to bend, stoop, squat, crawl, or lift her grandchildren; raise her arms; and dress without difficulty. *Id.* He noted her reports of her activities, including driving approximately 30 minutes at a time, trying to make the bed, occasionally washing the dishes and cooking, lying around and watching television, and talking on the telephone. *Id.* He also discussed Plaintiff's testimony about her mental impairment. *Id.* The ALJ noted that although Plaintiff may experience some degree of pain or discomfort, as well as some degree of functional loss as a result of her impairments, he noted that such pain was not, alone, incompatible with the performance of some level of work activity. *Id.* The ALJ found that Plaintiff's subjective allegations about her pain and limitations was not supported by x-rays and other evidence in the record. *Id.* The ALJ also considered evidence suggesting that Plaintiff's depression has gone into remission with medication. *Id.* The ALJ ultimately found that although Plaintiff had objectively an identifiable, medically determinable impairment that could reasonably be expected to produce the pain and other symptoms that she alleges, he found that her allegations regarding her level of pain and the functional limitations imposed by her impairment were minimally credible. Tr. 20.

The ALJ found that Plaintiff retained the RFC to perform a full range of medium exertional work. Tr. 22. He noted that if a claimant can do medium work, she can also perform sedentary and light work. *Id.* Noting that Plaintiff's past relevant work as a bookkeeper did not require the performance of work-related activities precluded by his RFC finding, the ALJ found that Plaintiff could return to her past relevant work. *Id.* The ALJ therefore concluded that Plaintiff was not under a disability as defined by the Social Security Act at any time through the date of his decision.

Plaintiff submitted a Request for Review of Hearing Decision/Order on February 14, 2002. Tr.5-12. The Appeals Council issued its opinion on July 11, 2002, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that

there was no basis for changing the ALJ's decision and denied Plaintiff's request.  Tr. 3A-4.  The ALJ's decision, therefore, became the final decision of the Commissioner.

On May 20, 2003, the United States District Judge granted the Defendant's motion to reverse and remand.  Tr. 614-15.  The Appeals Council issued its order remanding this case to the ALJ on August 21, 2003, for further proceedings, including a new hearing.  Tr. 524-26.  While Plaintiff pursued her appeals on the previous applications, she filed another application for widow's insurance benefits and for supplemental security income benefits.  Tr. 472.  Plaintiff was found disabled effective December 13, 2001.  Therefore, the ALJ limited his decision to the period from October 15, 1999, Plaintiff's alleged disability date, until December 13, 2001.  Tr. 473.  On June 21, 2004, another hearing was held.  Tr. 487-523.  Plaintiff, represented by an attorney, appeared and testified in her own behalf.  Tr. 492-508.  John Simonds, a medical expert ("ME") and Michael Driscoll, a vocational expert ("VE"), appeared and testified as well.  Tr. 508-22.  The ALJ again issued a decision unfavorable to Plaintiff on August 10, 2004.  Tr. 469-80.

The ALJ found that: Plaintiff  has "severe" impairments, including migraine headaches, rheumatoid arthritis, and osteoarthritis.  Tr. 474.  He found that Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1, during the relevant period. *Id*.  Therefore, the ALJ was again required to determine whether Plaintiff retained the RFC to perform her past relevant work or other work existing in the national economy. Tr. 474.

The ALJ discussed the opinions of Dr. Abbo and Dr. Healing and again indicated his reasons for rejecting their opinions.  Tr. 474-76.  He further indicated that although he had accepted the opinions of the state agency medical consultants insofar as they opined that Plaintiff's impairments did not meet or equal in severity any impairment in the Listing of Impairments, he found that Plaintiff was more limited.  Tr. 474.

The ALJ discussed the findings of the consultative examiner, Dr. Ramachandran, as well as her MHMR treatment records. Tr. 475. He noted Plaintiff's testimony at the November 2001 hearing, as well as her testimony at the second administrative hearing in June 2004. Tr. 476-77. He noted Plaintiff's report of being able to, during the relevant period, lift five or 10 pounds occasionally, stand 10 or 15 minutes, and sit 10 or 15 minutes. Tr. 477. He also noted her testimony of taking off work because of pain, her knees giving out causing her to fall, using a walker, and taking medication for pain. *Id.* The ALJ noted Plaintiff's testimony of treatment at MHMR, having crying spells, taking medications, liking to be alone, and attending church on Sundays and Wednesdays. *Id.*

The ALJ also discussed the testimony of Dr. Simonds, the ME. Tr. 477-78. He noted Dr. Simonds' opinion that Plaintiff's depression did not meet or equal any listed impairment in the Listing of Impairments and his testimony that Plaintiff's depression did not significantly limit her ability to work for 12 or more months. Tr. 478. The ALJ noted that Dr. Simonds' opined that Plaintiff retained the RFC for light work, limited to work not involving complex details or requiring prolonged standing and walking. *Id.*

The ALJ noted that although Plaintiff alleged that she had osteoarthritis throughout her body, her physical examinations were unremarkable except for her knees, as reported by the consultative examiner. Tr. 478. He noted that although Plaintiff testified that she carried a diagnosis of rheumatoid arthritis, her laboratory panel was negative and her physical examinations were negative findings consistent with that diagnosis. *Id.* He found that Plaintiff's subjective complaints were "grossly disproportionate to the findings on physical examinations and diagnostic studies" performed during the relevant period. Tr. 479. The ALJ found that Plaintiff's mental impairment did not restrict her activities of daily living; did not create difficulties in maintaining

social functioning; resulted in mild deficiencies of concentration, persistence, or pace; and never resulted in episodes of decompensation. *Id.*

The ALJ found that Plaintiff retained the RFC to obtain, perform, and maintain work at the light exertional level and that Plaintiff's impairments did not prevent her from performing her past relevant work as a receptionist/bookkeeper from October 15, 1999, until December 13, 2001. The ALJ therefore concluded that Plaintiff was not disabled during this period.

Plaintiff filed written objections to the decision on August 30, 2004. Tr. 463-68. The Appeals Council considered the objections and concluded that it found no reason to assume jurisdiction. Tr. 459-61. The ALJ's decision, therefore, became the final decision of the Commissioner.

On July 1, 2005, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision finding that Plaintiff was not disabled from October 15, 1999, through December 13, 2001.

## II.   STANDARD OF REVIEW

An individual may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)(citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's

decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case, the ALJ found at step 4 that Plaintiff was not disabled because she could return to her past relevant work as a receptionist/bookkeeper. Tr. 480.

## III.   DISCUSSION

Plaintiff claims that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence because the ALJ failed to consider the evidence of her pain and failed to appropriately weigh and consider the opinions of her treating physicians. Plaintiff further argues that she has demonstrated that she has met the criteria of Section 12.04 and 1.02 of the Listing of Impairments. Having demonstrated that she is entitled to benefits, Plaintiff asks that this matter be remanded for an immediate award of benefits.

**A.     Whether the ALJ's opinion is supported by substantial evidence.**

Plaintiff argues that the ALJ erred in finding that she could return to her past relevant work at step 4 of the sequential evaluation process. She argues that ALJ's opinion is simply not supported by substantial evidence in the record because the ALJ failed to give appropriate weight to the opinions of her treating physicians and failed to appropriately consider her testimony and subjective

allegations as to the limitations imposed by her impairments. The ultimate issue is whether the ALJ's decision is supported by substantial evidence. The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

Plaintiff's treating physician, Dr. Healing, wrote a letter dated May 20, 1998, to Disability Determination Services. Tr. 262. In his letter Dr. Healing noted that he had been treating Plaintiff for five years and had not seen changes in Plaintiff's diagnosis of rheumatoid arthritis of the knee, elbow, hand, and feet. *Id.* Dr. Healing opined that Plaintiff was "unable to work at any occupation that would require use of these extremities." *Id.* Plaintiff argues that this opinion, if given appropriate weight, demonstrates that she was disabled.

On October 31, 2001, Plaintiff's treating psychiatrist, Dr. Abbo, completed a Mental Residual Functional Capacity Assessment form. Tr. 439-41. Dr. Abbo opined that Plaintiff was markedly limited in the ability to remember locations and work-like procedures; understand and remember very short and simple instructions; understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; make simple work decisions; complete a normal work day and work week without interruptions from psychologically based symptoms; accept instructions from supervisors; respond to changes in the work setting; and set realistic goals or make plans independently of others. Tr. 439-40. He noted that she was moderately limited in the ability to carry out very short and simple instructions; perform activities within a schedule; work in coordination with or proximity to others without being distracted; interact with the general public; and travel in unfamiliar places or use public transportation. *Id.* Dr. Abbo indicated that Plaintiff was not limited in a single area – the ability to be aware of normal hazards and take appropriate precautions. Tr. 440. Finally, he opined that Plaintiff has experienced more than four episodes of decompensation.

Tr. 441. Dr. Abbo indicated that Plaintiff has a diagnosis of major depressive disorder, recurrent, with multiple hospitalizations in the past. *Id*. He indicated that Plaintiff has poor concentration, can't recall instructions and carry them [out], is indecisive, and "likely to decompensate under stress." *Id*. He opined that Plaintiff's prognosis is "very guarded with both mental and physical impairment." *Id*. Plaintiff argues that the opinion of Dr. Abbo, if given appropriate weight, also demonstrates that she is disabled.

The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). On the other hand, "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456.

However, "[a]mong the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.' These determinations are legal conclusions that the regulation describes as 'reserved to the Commissioner.'" *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003)(citing 20 C.F.R. § 404.1527(e)(1)).

Unless the Commissioner gives a treating source's opinion controlling weight, the Commissioner will consider six factors in deciding the weight to give to any medical opinion. 20 C.F.R. § 404.1527(d). The Fifth Circuit held in *Newton* that "an ALJ is required to consider each of the [six] factors before declining to give any weight to the opinions of the claimant's treating specialist." *Newton*, 209 F.3d at 456. Thus, the ALJ is required to consider the six factors if he

declines to give the opinion of a treating specialist any weight.   Pursuant to Soc. Sec. Ruling 96-2p(July 2, 1996)("SSR 96-2p"), and 20 CFR §§ 404.1527(a) and 416.927(a), "medical opinions" are opinions about the nature and severity of an individual's impairment(s) and are the only opinions that may be entitled to controlling weight. The requirement that the ALJ discuss the six factors set forth in *Newton* and 20 C.F.R. § 404.1527(d) applies only to medical opinions and does not apply to conclusory statements that a claimant is disabled.  *Frank*, 326 F.3d at 620.

The ALJ may also reject a treating physician's opinion if he finds, with support in the record, that the physician is not credible and is "leaning over backwards to support the application for disability benefits." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)(citing *Whitney v. Schweiker*, 695 F.2d 784, 789 (7th Cir. 1982)).

On July 1, 1997, Plaintiff sought care at the emergency room for acute situational stress.  Tr. 254.  Plaintiff reported that she had had problems since her husband had died in February 1997 and her daughter escaped from prison.  *Id.*  Plaintiff was instructed to take Valium if needed.  *Id.*

A progress note from Abilene MHMR dated January 19, 1998, indicates Plaintiff's report of being worried about losing her house because of her inability to pay the mortgage. Tr. 319.  She noted that she was still depressed and woke up frequently at night.  *Id.*  Dr. Tratnik noted that Plaintiff's mood was depressed, affect was appropriate, and she was oriented X3, with no delusions, hallucinations, or suicidal or homicidal ideation.  *Id.*  Plaintiff's medication was adjusted and her Elavil[5]  was increased to help her sleep.  *Id.*  A February 19, 1998, progress note indicated that Plaintiff denied any side effects from her medication.  Tr. 310.  Plaintiff again denied any side effects or problems with her medication on March 19, 1998.  Tr. 309.  Dr. L. Tratnik indicated in

---

[5]      Elavil® (amitriptyline) is in a class of drugs called tricyclic antidepressants.   It is used to treat depression, pain, and other symptoms.   Found at WebMd: http://www.webmd.com/drugs/drug-1807-Elavil.aspx?drugid=1807&drugname=Elavil (August 22, 2006).

a progress note dated April 18, 1998, that Plaintiff's diagnosis was depression and indicated that

Plaintiff had a GAF score of 35.[6]  Tr. 308.  Dr. Tratnik indicated that Plaintiff's "diagnosis remains

the same" and noted that Plaintiff's mood was depressed, her thinking was clear and goal oriented,

and she denied any hallucinations or suicidal or homicidal ideation.  Tr. 304-07.  He noted that

Plaintiff's daily activities included household chores, Plaintiff's concentration was fair, and she

reported no side effects from her medication. Tr. 304-05. A provider indicated on May 11, 1998 that

Plaintiff was alert and responsible and denied any side effects or problems with her medication.  Tr.

302.  Plaintiff's MHMR notes indicate that she has no job and wants SSI, that she needs to have

Social Security initiated, and that Deidra was helping her to receive SSI. Tr. 291, 299, 316.  A care

provider noted on July 8, 1998, that Plaintiff was oriented X3, her thought contact was appropriate,

she had good recent and remote memory, speech was normal, affect was appropriate, insight was

good, judgment was intact, intellect was below average, and mood was depressed and anxious.  Tr.

299.  On September 25, 1998, Dr. Tratnik noted that Plaintiff was still depressed, her thinking was

clear and goal directed, she was oriented X3, and she reported no delusions, hallucinations, or

homicidal or suicidal ideation.  Tr. 288.  Dr. Tratnik also indicated that Plaintiff's GAF score was

40.  Dr. Tratnick noted on December 16, 1998, that Plaintiff had "mild depression," was alert and

oriented X3, her thinking was clear and goal directed, she denied hallucinations or homicidal or

suicidal ideation, she did household chores, memory was intact, judgment was impaired, and she

reported no serious side effects.  Tr. 281-82.  On March 10, 1999, Dr. Tratnik noted Plaintiff's report

of doing fair.  Tr. 277.  He indicated that she was oriented X3, thinking was clear, mood was mildly

depressed, she denied hallucinations or suicidal or homicidal ideation, and she reported no serious

---

[6]A GAF score of 31 to 40 indicates some "impairment in reality testing or communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." *See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.

side effects from her medications. *Id*.  A June 2, 1999, progress note indicates that Plaintiff denied any problems and was less depressed, with clear, goal oriented thinking and no delusions, hallucinations, or suicidal or homicidal ideation.  Tr. 273.   A progress note from November 17, 1999, indicates Plaintiff's report of doing fair, with no complaints.  Tr. 266.  Dr. Tratnik again noted on February 9, 2000, that Plaintiff was doing fair, with clear thinking and mildly depressed mood and denying delusions, hallucinations, or suicidal or homicidal ideation.  Tr. 429.  Dr. Tratnik indicated on April 26, 2000, that Plaintiff was in fair remission.  Tr. 427.  He noted that she reported that she was doing fair with no complaints.  Tr. 426.  An MHMR provider indicated on July 12, 2000, that Plaintiff's diagnosis was major depressive disorder, recurrent, mild, and opined that she had a GAF score of 50.  Tr. 424.  A progress note from Dr. Tratnik on that date indicates that Plaintiff found out that her sister has lung cancer and was mildly depressed.  Tr. 422.  A note dated September 28, 2000, indicates that Plaintiff had good grooming, euthymic mood, appropriate affect, normal speech, coherent/logical thought processes and normal thought content, and no reports of delusions, hallucinations, or suicidal or homicidal ideation.  Tr. 419.  She was noted to be alert and oriented X3, was attentive with intact concentration, but with impaired memory.  Tr. 420.  Plaintiff was noted to be experiencing family stress, but her care provider opined that she had stable depression.  *Id*.  On January 29, 2001, Dr. Abbo noted that Plaintiff was well-groomed, with a mildly depressed mood, appropriate affect, normal speech, coherent/logical thought processes and normal thought content.  Tr. 417.  He noted that Plaintiff was attentive, with impaired concentration and intact memory.  *Id*.  Dr. Abbo noted Plaintiff's report of doing fair with no major problems, her medications were helping, and she was doing household work as much as she can tolerate.  Tr. 416.  He opined that Plaintiff was "[i]n fairly good remission," although she had medical problems.  *Id*.  Dr. Abbo again noted that Plaintiff was doing fair on May 16, 2001, although she reported stress from her sister's death.   Tr. 413.  Dr. Abbo noted, however, that Plaintiff's medications were

helping and she was not deeply depressed. *Id*. He opined that Plaintiff was experiencing situational stress, with her medication helping. *Id*. Another care provider noted on July 27, 2001, that Plaintiff had "remained stable this quarter," and she reported that her medication continued to be effective. Tr. 409. Plaintiff's MHMR records also indicate no history of hospitalization. Tr. 315.

In his opinion the ALJ rejected Dr. Abbo's opinion insofar as he indicated that Plaintiff was markedly and moderately limited in almost all functional areas, with poor concentrated, a poor prognosis, and more than four episodes of decompensation. In rejecting this opinion, the ALJ noted that Dr. Abbo's opinion was unsupported by MHMR treatment notes and records and was not supported by objective medical evidence in the record. Tr. 478-79.

Plaintiff argues that the ALJ erred in rejecting Dr. Abbo's opinion and further argues that the evidence demonstrates that she has met criteria for presumptive disability under Section 12.04 of the Listing of Impairments. Plaintiff indicates that she seeks a remand with direction for an immediate award of benefits.

When the court finds that the ALJ's opinion is not supported by substantial evidence, the court may remand with the instruction to make an award if the record enables the court to determine definitively that the claimant is entitled to benefits. *See Ferguson v. Schweiker*, 641 F.2d 243, 250 n.8 (5th Cir. Unit A Mar. 1981)(citing *Johnson v. Harris*, 612 F.2d 993, 998 (5th Cir. 1980); *see also McQueen v. Apfel*, 168 F.3d 152, 156 (5th Cir. 1999). A court may "at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *see McQueen*, 168 F.3d at156. "'Good cause shown' . . . [may] include a finding that the Secretary's decision is unsupported by substantial evidence, combined with an inability to make a definitive ruling concerning a claimant's disability based on the record before the court." *Ferguson*, 641 F.2d at 250 n.8. In *Ferguson*, the

Fifth Circuit found that where the Secretary's findings were not supported by substantial evidence but that the record did not support a dispositive ruling for the claimant, the appropriate remedy was to remand for further proceedings. *Id.* Plaintiff argues that she is entitled to a remand with an award of benefits because she has definitively shown that she has meet the criteria of Sections 1.02 and 12.04 of the Listing of Impairments and argues that if the ALJ had given appropriate weight to the opinions of her treating physicians, he would have found her disabled.

In evaluating mental disorders under the Listing of Impairments, the Commissioner first considers whether the claimant has a medically determinable mental impairment. *See* 20 C.F.R. Pt. 4, Subpt. P, App. 1, § 12.00. Upon such a determination, the Commissioner then considers the criteria set forth in paragraphs B and C, which describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity. *Id.* The functional limitations in paragraphs B and C must be the result of the mental disorder described in the diagnostic description that is manifested by the medical findings. *Id.* The Commissioner will first consider the paragraph B criteria before the paragraph C criteria and will assess the paragraph C criteria only if it is found that the paragraph B criteria are not satisfied. *Id.* The claimant will be found to meet a listed impairment if the diagnostic description in the introductory paragraph and the criteria of both paragraphs A and B (or A and C, when appropriate) of the listed impairment are satisfied, thereby establishing presumptive disability. 20 C.F.R. Pt. 4, Subpt. P, App. 1, § 12.00.

Plaintiff argues that she has met the criteria of § 12.04, Affective Disorders, and has shown presumptive disability. *See* 20 C.F.R. Pt. 4, Subpt. P, App. 1. In order to meet the listing for § 12.04 for Affective Disorders, the Plaintiff must show medically documented persistence of depressive

syndrome[7] or manic syndrome[8] or bipolar syndrome,[9] which must result in two of the following: marked restriction of the activities of daily living; or marked difficulty maintaining social functioning or marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04 (A)-(B). Alternatively, the Plaintiff may demonstrate a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support and one of the following:  repeated episodes of decompensation, each of extended duration; or a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in environment would be predicted to cause the individual to decompensate; or a current history of one or more years' inability to function outside a highly supportive living arrangement, and a continued need for such arrangement. *Id.*

Section 12.04 defines episodes of decompensation as:

exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence,

---

[7] Depressive syndrome is characterized by at least four of the following:  anhedonia or pervasive loss of interest in almost all activities; or appetite disturbance with change in weight; or sleep disturbance; or psychomotor agitation or retardation; or decreased energy; or feelings of guilt or worthlessness; or difficulty concentrating or thinking; or thoughts of suicide; or hallucinations, or paranoid thinking. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04 A(1)(a)-(I).

[8] Manic syndrome is characterized by at least three of the following:  hyperactivity; or pressure of speech; or flight of ideas; or inflated self-esteem; or decreased need for sleep; or easy distractability; or involvement in activities that have a high probability of painful consequences which are not recognized; or hallucinations or paranoid thinking. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04 (A)(2)(a)-(h).

[9] Bipolar syndrome is characterized with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes). 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04 (A)(3).

or pace.  Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two).  Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.

*See* § 12.04C(4).  This section also defines repeated episodes of decompensation each of extended duration to mean "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks."  *Id*.  More frequent episodes of shorter duration or less frequent episodes of longer duration may be considered to substitute for the listed finding in a determination of equivalence.  *Id*.

Plaintiff relies upon the mental residual functional capacity assessment form completed by Dr. Abbo, who opined that she was markedly or moderately limited in most functional areas, and has experienced more than four episodes of decompensation.  The ALJ found that Plaintiff had no episodes of decompensation

The record demonstrates that the ALJ did not accept the opinion of Dr. Abbo as to the limitations imposed by Plaintiff's impairments.  A review of the record further demonstrates that Dr. Abbo's opinion was not supported by his own treatment and progress notes, as well as those of other MHMR care providers, including Dr. Tratnik, another treating psychiatrist.  For example, Dr. Abbo indicated that Plaintiff was mildly limited in her ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.  However, MHMR records repeatedly indicated that Plaintiff was appropriately dressed and had fair hygiene throughout the relevant period.  *See* Tr. 267 (November 19, 1999), 273 (June 2, 1999), 277 (March 10, 1999), 288 (September 25, 1998, 419 (September 28, 2000).  Although Dr. Abbo opined that Plaintiff was

markedly limited in the ability to maintain attention and concentration for extended periods, Dr. Tratnik opined that her concentration was "fair" on April 13, 1998, was noted to have intact concentration on September 28, 2000, and was noted to have impaired concentration on January 29, 2001. Tr. 304-05, 417, 420.  Plaintiff was noted to have good recent and remote memory on July 8, 1998, but was noted to have impaired memory on September 28, 2000. Tr. 299, 420.  Plaintiff was noted to be doing "fair" on March 10, 1999, she was noted to be less depressed on June 2, 1999, she was doing fair with no complaints on November 17, 1999, and on February 10, 2000, and Dr. Tratnik opined that she was again doing fair with no complaints and that she was in fair remission on April 26, 2000. Tr. 266, 273, 277, 426-27, 429.  Dr. Abbo himself noted on January 24, 2001, that Plaintiff was doing fair with no problems and opined that Plaintiff was "[i]n fairly good remission," although she had medical problems. Tr. 416-17.  While Plaintiff clearly experienced situational stress when she found our her sister had lung cancer and with her subsequent passing, Dr. Abbo noted that Plaintiff's medications were helping.  Tr. 413, 416.  Indeed, on July 27, 2001, an MHMR provided that Plaintiff had "remained stable" during that quarter and also noted that Plaintiff's medications continued to be effective.  Tr. 409.

The record demonstrates that Dr. Abbo's opinion as to Plaintiff's limitations, as set forth in the mental residual functional capacity questionnaire, was not supported by the progress and treatment notes of Plaintiff's mental health care providers.  Dr. Abbo indicated that Plaintiff had experienced more than four episodes of decompensation with a history of "multiple hospitalizations" in the past; however, even the MHMR records provide no support for this opinion.  Tr. 315.

Plaintiff argues that "she reported to MHMR various times because of migraine headaches under emergency circumstances or else a hospital," caused by mental stress, which demonstrates decompensation.  The record demonstrates that Plaintiff did seek treatment at the emergency room

for acute situational stress and was instructed to take Valium.  Tr. 254.  Plaintiff also sought

treatment for migraines.  However, under Section 12.04 of the Listing of Impairments, even if the

July 1, 1997, emergency room visit constituted an "episodes of decompensation" as demonstrated

by "an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less

stressful situation (or a combination of the two)," the record does not demonstrate that Plaintiff has

experiences four or more  repeated episodes of decompensation, with at least  "three episodes within

1 year, or an average of once every 4 months, each lasting for at least 2 weeks."   *See* 20 C.F.R. Pt.

4, Subpt. P, App. 1, § 12.04.

    While "ordinarily, the opinions, diagnoses, and medical evidence of a treating physician who

is familiar with the claimant's injuries, treatments, and responses should be accorded considerable

weight in determining disability," the treating physician's opinions are not conclusive.  *Perez v.

Barnhart*, 415 F.3d 457, 465-466 (5th Cir. 2005)(internal citations omitted).  As the Fifth Circuit

noted in *Perez*, "[w]hen good cause is shown, less weight, little weight, or even no weight may be

given to the physician's testimony."  *Perez,* 415 F.3d at 466.  Such "good cause" exceptions may

include "disregarding statements that are brief and conclusory, not supported by medically

acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence."

*Id.* (citing *Scott*, 770 F.2d at 485).  In this matter, the ALJ correctly noted that Dr. Abbo's opinion,

as set forth in the mental residual functional capacity form, was conclusory and unsupported by the

evidence in the record, including the MHMR treatment and progress notes.  Tr. 477-78.  The ALJ

also noted that Dr. Abbo had, effectively, become an advocate for Plaintiff.  Tr. 478.

    Clearly, "the ALJ cannot reject a medical opinion without an explanation."  *Loza*, 219 F.3d

at 395.  Here, the ALJ adequately explained his reason for rejecting Dr. Abbo's opinion and

demonstrated good cause for doing so.  In *Newton*, the Fifth Circuit confirmed that "'the ALJ is free

to reject the opinion of any physician when the evidence supports a contrary conclusion." *Newton*, 209 F.3d at, 455 (*citing Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994)).  Moreover, the ALJ appropriately noted that Dr. Abbo was Plaintiff's treating physician and a specialist, he discussed the nature and length of Plaintiff's treating relationship with Dr. Abbo and her MHMR care providers, and he specifically addressed the supportability and consistency of Dr. Abbo's opinion with the evidence of record.  *See* 20 C.F.R. § 404.1527(d)(1)-(6).  I find that the ALJ did not err by failing to accord controlling weight to Dr. Abbo's opinion nor did he err by rejecting such opinion as unsupported by the evidence.

Plaintiff also claims that the ALJ erred in rejecting the opinion of Dr. Healing and further argues that substantial evidence in the record demonstrates that she has met the criteria for Section 1.02 of the Listing of Impairments.

In order to demonstrate disability under Section 1.02 of the Listing of Impairments, Plaintiff must demonstrate major dysfunction of a joint(s), characterized by gross anatomical and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s) and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s) with involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c. *See* 20 C.F.R. Part 4, Subpt. P, App. 1, § 1.02.  Section 1.00 (1) provides that loss of function may be due to bone or joint deformity or destruction from any cause and defines "loss of function" as

> the inability to ambulate effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment, or the inability to

> perform fine and gross movements effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment. The inability to ambulate effectively or the inability to perform fine and gross movements effectively must have lasted, or be expected to last, for at least 12 months.

*See* 20 C.F.R. Part 4, Subpt. P, App. 1, § 1.00 B.   The inability to ambulate effectively is defined as "an extreme limitation of the ability to walk," such as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. *Id.*   "[E]xamples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation."

Plaintiff relies upon the opinion of Dr. Healing, who opined that Plaintiff has rheumatoid arthritis of the knee, elbow, hand, and feet and indicated that Plaintiff is "unable to work at any occupation that would require the use of these extremities." Tr. 262.   The record demonstrates that x-rays performed on January 27, 1998, on both of Plaintiff's knees indicated that both knee joint spaces were intact, with a very minimal valgus deformity. Tr. 222.   The record further demonstrates that Plaintiff reported knee pain to Darrold A. Stoebner on January 26, 1998, and had a "waddle-like gait." Tr. 223.   The record further demonstrates that Dr. Ramachandran noted 1+ swelling in Plaintiff's knees and flexion in the right knee limited by 15 degrees. Tr. 363.   He also noted that Plaintiff's gait was normal, and she did not use a cane or any assistive device while ambulating. *Id.* An x-ray of Plaintiff's left wrist, after an injury indicated a remote fracture but was otherwise

negative.  Tr. 176.  The record indicates that she was diagnosed at some point with rheumatoid arthritis and reported pain in her knees, as well as morning stiffness. Tr. 140, 142, 145.

Plaintiff argues that Dr. Healing was "but one of many doctors from this Hospital" who treated her, and indicated that her diagnoses were by "various doctors and at various times," and were all consistent with his diagnosis and prognosis.  However, a careful review of the record does not reveal objective medical evidence which supports Dr. Healing's opinion that Plaintiff is unable to use her extremities. I find that the ALJ did err in rejecting Dr. Healing's opinion, which was unsupported by objective medical evidence.  I further find that the ALJ adequately explained his reasons for rejecting such opinion.

"The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is  most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)(citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)).

The ALJ determines at step 3 of the 5-step sequential analysis whether a claimant's severe impairments meet or equal one or more of the Listings.  At step 3, the burden of proof rests with a claimant.  Ultimately, the claimant has the burden of proving that his impairment or combination of impairments meets or equals the listings.  20 C.F.R. § 404.1520(d); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). That burden is to provide and identify medical signs and laboratory findings that support *all* criteria for a step 3 impairment determination.  *McCuller v. Barnhart,* 72 Fed.Appx. 155, 158 (5th Cir. 2003); *Selders,* 914 F.2d at 619;  20 C.F.R. § 404.1526(a).  If a claimant fails to provide and identify medical signs and laboratory findings that support all criteria of a Listing, the court must conclude that substantial evidence supports the ALJ's finding that the required impairments for any Listing are not present.  *Selders,* 914 F.2d at 620.  To meet a listed impairment, the claimant's medical findings (i.e., symptoms, signs, and laboratory findings) must

match those described in the listing for that impairment. 20 C.F.R. §§ 404.1525(d), 404.1528; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Plaintiff has failed to provide and identify medical signs and laboratory findings that support *all* of the criteria required for a Listing. The requirements of Listing 1.02 include, at least, major dysfunction of a joint(s) characterized by gross anatomical deformity of a joint, with an inability to ambulate effectively or with the involvement of specified upper extremity joints resulting in the inability to perform fine and gross movements effectively. The objective evidence in the record does not demonstrate that Plaintiff has met *any* of the criteria of § 1.02. X-rays and examination did not reveal gross anatomical deformity, joint space narrowing, bony destruction or ankylosis of the affected joints, although swelling and some limitation of range of movement in Plaintiff's knee was noted. Other than Plaintiff's testimony at the second hearing, where she alleged that she "use[d] a walker a lot," there is no evidence in the record demonstrating that Plaintiff was unable to ambulate effectively, as defined in 1.00B2b. *See* Tr. 505. Dr. Healing's statement that Plaintiff could not use her extremities was appropriately rejected by the ALJ and does not constitute substantial evidence to demonstrate that Plaintiff was unable to ambulate effectively or to perform fine and gross movements of the upper extremities. Plaintiff bears the burden at step 3 for demonstrating that she has met *all* of the criteria of an impairment in the Listing of Impairments. Plaintiff has not demonstrated a gross anatomical deformity of a joint or either of the inability to ambulate effectively or the inability to perform fine and gross movements effectively due to the specified upper extremity joints. The record does not demonstrate that Plaintiff met the criteria of Section 1.02 of the Listing of Impairments.

Plaintiff has also failed to demonstrate that she has experienced marked restriction of the activities of daily living; or marked difficulty maintaining social functioning or marked difficulties

in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration; nor has she demonstrated a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support and one of the following: repeated episodes of decompensation, each of extended duration; or a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in environment would be predicted to cause the individual to decompensate; or a current history of one or more years' inability to function outside a highly supportive living arrangement, and a continued need for such arrangement.

Having considered the evidence of record, the court is also unable to find definitively that Plaintiff has shown that her impairments met or equaled a Listing in the Listing of Impairments for the relevant period. Therefore, the ALJ did not err in evaluating Plaintiff's impairments at step 3 of the sequential evaluation process.

**B.      Whether the ALJ failed to appropriately consider Plaintiff's subjective allegations of disabling pain.**

Plaintiff argues that the ALJ failed to appropriately consider her allegations of pain and erred in making his credibility assessment. She alleges that the ALJ erred by rejected her allegations of pain simply because they were not supported by objective medical evidence. She argues that the evidence in the record supports her complaints of pain and that the ALJ should have found her pain disabling, as it caused significant limitations to her ability to perform work activity.

Pursuant to SSR 96-7p, the adjudicator is required to go through a two-step process in evaluating a claimant's symptoms. The ALJ must first:

> consider whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the individual's pain

-25-

or other symptoms. . . . Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.  For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p.

The record demonstrates that the ALJ found that Plaintiff had objectively identifiable, medically determinable impairments that could reasonably be expected to produce the pain and other subjective complaints expressed.  Tr. 476.  He summarized Plaintiff's subjective allegations of pain as set forth in her testimony.  Tr. 476-77.  He noted that Plaintiff had reported pain in her knees to her treating physicians and to Dr. Ramachandran, the consultative examiner.  Tr. 475-76.  He noted that Dr. Ramanchandran had found swelling and painful flexion in Plaintiff's knees upon examination and also noted that previous examinations had demonstrated a large effusion and mild warm in her left knees, as well as diminished range of motion due to pain, and tenderness and mild crepitus in the knees.  Tr. 474-75.  The ALJ also noted Dr. Simonds' testimony, in which he opined that Plaintiff had normal knee x-rays on two occasions but experienced period swelling and pain, with normal hands and shoulders.  Tr. 478.  He noted that although the objective evidence had indicated that she was limited to a modified range of medium level work, Dr. Simonds' opined that Plaintiff could perform work at the light exertional level and was limited because of the swelling in her knee.  *Id*.  The ALJ indicated that he considered Plaintiff's subjective allegations of pain, other complaints, and the functional limitations imposed therefrom in accordance with 20 C.F.R. §§ 404.1529 and 416.929 and SSR 96-7p and found them not entirely supported by the findings of the objective medical evidence.  *Id*.  The ALJ specifically noted that although Plaintiff alleged that

she had arthritis throughout her body, her physical examinations and x-rays were normal, except for the swelling, pain, and reduced range of motion in the knee,.  Tr. 478.  In his opinion the ALJ found that Plaintiff's allegations of disability and of disabling physical and mental impairments were not supported insofar as her pain and functional loss were disabling.  Tr. 478.  The ALJ indicated that he recognized that Plaintiff experienced pain and some degree of functional loss.  *Id.*  He indicated that he limited her to work at the light exertional level in recognition of her subjective allegations.  Tr. 478-79.

First, Plaintiff correctly argues that pain may be disabling.  For pain to rise to the level of disabling, that pain must be "constant, unremitting, and wholly unresponsive to therapeutic treatment."  *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991).  Subjective complaints of pain must be corroborated by objective medical evidence.  *Chambliss*, 269 F.3d at 522 (*citing Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989)).  Whether pain is disabling is an issue for the ALJ, who has the primary responsibility for resolving conflicts in the evidence.  *Chambliss,* 269 F.3d at 522 (*citing Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991)).  The ALJ's determination as to whether pain is disabling is entitled to considerable deference.  *See Chambliss*, 269 F.3d at 522.

However, Plaintiff also argues that the her statements about her pain and symptoms may not be disregarded solely because they are not substantiated by objective medical evidence.  The ALJ may discount subjective complaints of pain as inconsistent with other evidence in the record.  *See Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003) (citing *Wren*, 925 F.2d at 128 (citation omitted)).  Plaintiff argues that her pain did impose significant limitations.  She points to Dr. Healing's opinion indicating that she could not use her extremities.  Such opinion was, however,

properly rejected because it had no basis in the objective medical evidence or in Dr. Healing's treating notes.  Plaintiff points to Dr. Ramanchandran's report that she had 1+ swelling and a limited range of motion.  However, the ALJ noted that he had specifically considered such evidence in making his RFC assessment and had, in fact, found Plaintiff able to perform light exertional activity, rather than work at the medium level.  The ALJ did not reject all of Plaintiff's allegations of pain.  Rather, the record demonstrates that he considered the extent to which such allegations were supported by evidence in the record and incorporated those limitations into his RFC finding which he found most supported by the record.

The ALJ clearly addressed Plaintiff's activities and her own complaints of pain in making his credibility determination.  He also addressed the findings of Plaintiff's treating and examining physicians.  SSR 96-7p notes that in making the credibility determination, the ALJ may consider "the medical signs and laboratory findings; diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work."   The ALJ is also instructed to consider the entire record.  SSR 96-7p.  The ALJ's opinion demonstrates that he appropriately considered and discussed the record as a whole, as well as Plaintiff's specific subjective allegations as to the disabling nature of her pain in making his credibility determination.  His credibility determination is supported by substantial evidence in the record.  The ALJ did not err in considering the evidence, including Plaintiff's subjective allegations, of pain in the record.

**C.     Whether a remand for an award of benefits is appropriate**.

Plaintiff further sought a reversal of this matter for an award of benefits.  The court has already found that the ALJ did not err in evaluating the opinions of Plaintiff's treating physicians, in evaluating her impairment at step 3 of the sequential evaluation process, and in evaluating the evidence of pain in the record.  The ALJ decision is supported by substantial evidence in the record. A reversal with directions to award benefits is not proper. *See McQueen*, 168 F.3d at 156.  The cumulative effect of the evidence in this case does not meet the very high burden of establishing "disability without any doubt." *See Poe v. Comm'r of Soc. Sec*., 2003 U.S. Dist. LEXIS 21307, 22-23 (N.D. Tex. 2003).

## IV.     CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States District Judge affirm the Commissioner's decision and dismiss the Plaintiff's complaint with prejudice.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties.  Pursuant to Title 28, United States Code, Section 636(b)(1) and Rule 4 of Miscellaneous Order No. 6, For the Northern District of Texas, any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 11 days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory, or general objections.  A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985).  Additionally, any failure to file written objections to the proposed findings,

conclusions, and recommendation within 11 days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

DATED this 1st day of September, 2006.

**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**